IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,            | * |                          |
| Plaintiff,                           | * |                          |
| v.                                   | * | Case No.: PWG-17-1007    |
| TIMOTHY O'BRIEN, *et al.*,           | * |                          |
| Defendants.                          | * |                          |

* * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

The United States has sued Timothy P. O'Brien in his individual capacity as Special Administrator of the insolvent Estate of Louis C. Pate (the "Estate"), and Diane V. Marshall, in her individual capacity as Representative of the Estate. Count I seeks to collect "Mr. Pate's unpaid federal income taxes, penalties, and interest assessed against Mr. Pate for the 2004 tax periods and . . . the 2007-2009 tax periods" through a judgment against O'Brien or, alternatively, against Marshall. Am. Compl. 1–2 & ¶¶ 11–16, ECF No. 10.[1] O'Brien has moved to dismiss

---

[1] Marshall, who is Pate's stepdaughter, is sued in her individual capacity as Representative of the Estate, and as the Trustee of the Louis C. Pate Living Trust, the Louis C. Pate and Virginia J. Pate Revocable Joint Trust, and the Diane V. Marshall Trust. Am. Compl. 1 & ¶ 6. The United States also requests an order setting aside or disregarding allegedly fraudulent conveyances Marshall made, and it seeks a judgment against Marshall for causing both Pate Trusts "to make distributions before paying Mr. Pate's federal income tax liabilities." *Id.* at 2–3. Marshall has filed an Answer. ECF No. 19.

The United States also sought, in Count VII, a judgment against O'Brien "for causing the Pate Estate to make distributions to other creditors before paying Mr. Pate's federal income tax liabilities," Am. Compl. 3, but the parties stipulated to the dismissal of this claim, *see* ECF Nos. 18, 20. Thus, the only remaining court against Mr. O'Brien, Count I, is against him only in a representative, not personal capacity. *See, e.g.*, Pl.'s Opp'n 1, ECF No. 35 ("Count I seeks

the claim against him. ECF No. 28. I agree with him that "[a] Special Administrator, like Mr. O'Brien, is not a proper defendant to a lawsuit against an estate because a Special Administrator lacks the authority to defend a lawsuit or litigate actions on behalf of an estate." Def.'s Mem. 1, ECF No. 28-1.[2] Accordingly, I will grant his Motion to Dismiss.

**Background**

Following Louis Pate's death on September 5, 2012, his Estate was opened with the Register of Wills for Prince George's County. Def.'s Mem. 2; Pl.'s Opp'n 2. The Orphans' Court[3] for Prince George's County appointed O'Brien as Special Administrator to the Estate on November 7, 2013, when it removed Willie Mae Pate Roary as personal representative. Appointment Order, ECF No. 28-3; Def.'s Mem. 2; Pl.'s Opp'n 2. In that capacity, O'Brien filed a Petition for Authorization to Pay Income Tax Liabilities on March 31, 2016, and on May 16, 2016, the Orphans' Court "authorized and directed" him to pay federal taxes of $7,243.69 and state taxes of $4,666.41. Order, ECF No. 28-4; Def.'s Mem. 2–3; Pl.'s Opp'n 3.

The Orphans' Court closed the Estate, which was insolvent, on May 17, 2016. Def.'s Mem. 3; Pl.'s Opp'n 3. No successor personal representative had been appointed; O'Brien still was serving as Special Administrator. Orphans' Ct. Docket 1, ECF No. 28-2. As authorized and directed, O'Brien paid $7,243.69 in federal taxes from the Estate on November 21, 2016.

---

judgment against O'Brien in his representative capacity as the court appointed special administrator of the Estate of Louis C. Pate . . .").

[2] The United States filed an Opposition, ECF No. 35, and O'Brien filed a Reply, ECF No. 36. A hearing is not necessary. *See* Loc. R. 105.6. Because I resolve the motion on this ground, I need not consider whether, as O'Brien argues, his "duties as Special Administrator ended in 2016 when the final assets of this insolvent estate were distributed," such that he no longer was the Special Administrator when the United States filed suit. Def.'s Mem. 1.

[3] Name notwithstanding, the Orphans' Courts in Maryland handle probate cases.

Account Tr. 3, ECF No. 35-2; Disbursements, ECF No. 35-3. The United States alleges that, as of August 7, 2017, the total amount still due for Pate's federal income taxes, including penalties and statutory interest, for 2004, 2007, 2008 and 2009 is $229,974. Am. Compl. ¶¶ 12, 15. As noted, the United States seeks to collect this amount from O'Brien or, alternatively, Marshall. *Id.* at 1–2 & ¶¶ 11–16.

**Standard of Review**

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

At this stage of the proceedings, I accept the well pleaded facts in the United States's Amended Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Also, I may take judicial notice of relevant state court filings. *See* Fed. R. Evid. 201(b)(2).

**The Role of Special Administrators**

Maryland's Estates & Trusts law provides that the state court may appoint a special administrator "whenever it is necessary to protect property prior to the appointment and qualification of a personal representative or upon the termination of appointment of a personal

3

representative and prior to the appointment of a successor personal representative." Md. Code Ann., Est. & Tr. § 6-401(a); *see also* Md. R. 6-454(a) ("When necessary to protect property before the appointment and qualification of a personal representative or before the appointment of a successor personal representative following a vacancy in the position of personal representative, the court shall enter an order appointing a special administrator."). Put differently, the special administrator fills in when there is no personal representative for an estate. *See* Est. & Tr. § 6-401(a).

The special administrator's duties are to "collect, manage, and preserve property and account to the personal representative upon his appointment." Est. & Tr. § 6-403;[4] *see also* Md. R. 6-454(d) ("The special administrator shall collect, manage, and preserve property of the estate and shall account to the personal representative subsequently appointed. The special administrator shall have such further powers and duties as the court may order."). The special administrator's duties incorporate "all duties unperformed by a personal representative imposed under Title 7, Subtitles 2, 3, and 5 of [Estates & Trusts]."[5] Est. & Tr. § 6-403; *see also* Md. R.

---

[4] In full, Est. & Tr. § 6-403 provides:

> A special administrator shall collect, manage, and preserve property and account to the personal representative upon his appointment. A special administrator shall assume all duties unperformed by a personal representative imposed under Title 7, Subtitles 2, 3, and 5 of this article, and **has all powers necessary to collect, manage, and preserve property**. In addition, a special administrator has the other powers designated from time to time by court order.

Est. & Tr. § 6-403 (emphasis added).

[5] Title 7, which governs administration of estates, imposes a duty on the personal representative to "distribute all the assets of the estate of which he has taken possession or control . . . ." Est. & Tr. § 7-101(b). Under Subtitle 2, "Inventory and Appraisal," the personal representative has the duty to "prepare and file an inventory of property owned by the decedent at the time of his death," *id.* § 7-201, to have the inventoried items appraised, *id.* § 7-202, and to supplement the inventories and appraisals, *id.* § 7-203. Under Subtitle 3, "Accounting," the personal

6-454(d) ("The special administrator shall assume any unperformed duties required of a personal representative concerning the preparation and filing of inventories, accounts and notices of filing accounts, and proposed payments of fees and commissions.").

Although the *duties* of the special administrator are defined by reference to the personal representative's duties, the statutory provisions pertaining to the special administrator's *powers* do not reference the personal representative's powers. *See* Est. & Tr. § 6-403; Md. R. 6-454(d). Rather, the special administrator "has all powers necessary to collect, manage, and preserve property," as well as "the other powers designated from time to time by court order." Est. & Tr. § 6-403; *see also* Md. R. 6-454(d).

In sharp contrast to § 6-403's general language about the special administrator's powers, Subtitle 4 (which is absent from the list of Subtitles that define the duties of a special administrator) enumerates many specific powers of the personal representative, Est. & Tr. §§ 7-401 – 7-404, including the power to "prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted," with exceptions not relevant here. Est. & Trusts § 7-401(y)(1). Additionally, "[t]he personal representative may petition the court for permission to act in any matter relating to the administration of the estate," in response to which "[t]he court may pass any order it considers proper." Est. & Tr. § 7-402.

---

representative has the duty to "file written accounts of his management and distribution of property," *id.* § 7-301, and to pay inheritance taxes to the register, *id.* § 7-307. Under Subtitle 5, "Notice to Interested Persons of Matters Filed," the personal representative has the duty to "give written notice to all interested persons of the filing of an account with the court," *id.* § 7-501(a), and to give written notice to creditors who file claims, *id.* § 7-502.

5

## Parties' Arguments

O'Brien argues that, as Special Administrator, he "is not a proper defendant to a lawsuit against the estate," because a special administrator, unlike a personal representative, "is not authorized to defend an estate in litigation (unless expressly authorized by a court to do so)." Def.'s Mem. 5. He insists that "[a] Special Administrator's role . . . is closely circumscribed by statute [Est. & Tr. 6-403] to protect and preserve estate property until a Personal Representative is appointed." *Id.* at 6. In O'Brien's view,

> [b]y contrast to the statutory duties of a Personal Representative, which expressly includes prosecuting or defending litigation, *see* E.T. § 7-401(y), the statutory duties of a Special Administrator [under Est. & Tr. 6-403] do *not* include defending or prosecuting a lawsuit. Due to these limited powers, a Special Administrator expressly lacks the authority to make decisions on behalf of an estate in the context of defending or prosecution litigation. As a result, a Special Administrator lacks the capacity to act or make decision on behalf of an estate in the context of defending litigation."

*Id.* at 7.

The United States counters that "[s]tate probate law does not expressly and absolutely limit the powers of the special administrator to participate in litigation on behalf of the estate." Pl.'s Opp'n 4. As the United States sees it, "state probate law broadly gives special administrators the power to 'collect, manage, and preserve property of the estate.'" *Id.* at 5 (quoting Md. R. 6-454). In its view, Md. Rule 6-454(d) "adds responsibilities to the duties of the special administrator in administering the estate," rather than limiting his or her powers. *Id.* The United States notes that *Gibber on Estate Administration*, a treatise on Maryland probate law, "advises that 'it may be prudent for the special administrator to obtain the court's order prior to acting upon matters which are not routine," because "[t]he limitations on the right to manage or preserve property of the estate are undefined." *Id.* (quoting *Gibber on Estate Admin.* § 11.6 (2013)). And, relying on *Gibber*, the United States argues that "a special administrator does

have the authority to engage in some litigation," insofar as the special administrator "has the authority to bring an action in the Circuit Court for return of assets to the estate or to determine title to assets claimed to belong in the estate." *Id.* at 6. It argues that "[i]t would certainly be an odd result for the special administrator to file tax returns [as O'Brien did] and then never pay them from the assets of the estate prior to the closing of the probate proceeding without even trying to get court approval to do so." *Id.* at 7.

## Discussion

Whether O'Brien can be sued in his individual capacity as Special Administrator is a question of statutory interpretation under Maryland law.[6] Estates & Trusts § 6-403 grants special administrators "all powers necessary to collect, manage, and preserve property." Est. & Tr. § 6-403. The issue is whether this grant of power includes the authority to defend an estate in litigation, without a court order specifically granting that authority.

"[T]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature," and "[t]]he principal source for determination of legislative intent is the language of the statute itself." *Bennett v. Zelinsky*, 878 A.2d 670, 677–78 (Md. Ct. Spec. App. 2005) (citing *Bowen v. Smith,* 677 A.2d 81 (Md. 1996); *Lovellette v. Mayor & City Council of Baltimore,* 465 A.2d 1141 (Md. 1983)). Thus, the plain language of the statute is the starting point for the Court's analysis, and if it is unambiguous, it is the endpoint as well. *CGM, LLC v. BellSouth Telecommc'ns, Inc.*, 664 F.3d 46, 53 (4th Cir. 2011) (citing *Wilmington Shipping Co. v. New Eng. Life Ins. Co.,* 496 F.3d 326, 339 (4th Cir. 2007)); *see also Gomez v. Jackson Hewitt,*

---

[6] The parties agree that Maryland law applies. *See* Def.'s Mem. 5; Pl.'s Opp'n 5; *see also* Fed. R. Civ. P. 17(b) (providing that, for all parties other than "an individual not acting in a representative capacity" and a corporation, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located").

7

*Inc.,* 16 A.3d 261, 274–75 (Md. Ct. Spec. App. 2011). Language is unambiguous if it is not susceptible to more than one meaning. *Bennett*, 878 A.2d at 678. The court "seek[s] to avoid constructions that are illogical, unreasonable, or inconsistent with common sense," or that "render any word, clause, sentence or phrase of a statute meaningless." *Nimro v. Holden,* 110 A.3d 805, 811 (Md. Ct. Spec. App. 2015) (quoting *Balt. Cty. v. Balt. Cty. Fraternal Order of Police Lodge No. 4*, 96 A.3d 742, 756–57 (Md. 2014)) (citations and quotation marks omitted). Accordingly, Maryland courts "interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant." *Gillespie v. State*, 804 A.2d 426, 427 (Md. 2002).

When considering a statute with ambiguous language, "courts must consider not only the literal or usual meaning of the words but also the meaning of the words in light of the statute as a whole and within the context of the objectives and purposes of the enactment." *Bennett*, 878 A.2d at 678 (quoting *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 697 A.2d 455, 459 (Md. 1997)). "[T]he court looks to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole." *Antonio v. Security Servs. of Am., LLC*, 701 F. Supp. 2d 749, 764 (D. Md. 2010) (quoting *Bost v. State,* 958 A.2d 356, 361 (Md. 2008)). Notably, "[c]ourts are required to give effect to Congress' express inclusions and exclusions, not disregard them." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (citing *Russello v. United States,* 464 U.S. 16, 23 (1983)). And, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Russello*, 464 U.S. at 23 (internal quotation marks and brackets omitted)).

When interpreting a state statute, such as Est. & Tr. § 6-403, a federal court "defer[s] to statutory interpretation conducted by the 'state's highest court.'" *Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015) (quoting *United States v. Aparicio–Soria,* 740 F.3d 152, 154 (4th Cir. 2014) (en banc)). But if there is no interpretation from the state's highest court, an interpretation from an intermediate appellate court often provides "the next best indicia of what state law is." *Id*. (quoting *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.* § 4507 (1982))). The Court of Appeals of Maryland has observed that, "[a]lthough a Personal Representative generally has broad powers, the powers of a Special Administrator are limited to preserving and maintaining estate property, unless those powers are expanded by court order." *Green v. Nassif*, 934 A.2d 22, 25 n.4 (Md. 2007) (comparing Est. & Trusts § 6-403 with Est. & Trusts § 7-401); *see also Green v. Nelson*, 135 A.3d 914, 917 n.1 (Md. Ct. Spec. App. 2016) ("A special administrator has some but not all of the duties and powers entrusted to a personal representative." (citing Est. & Tr. § 6-403; *Banashak v. Wittstadt*, 893 A.2d 1236 (Md. Ct. Spec. App. 2006))).

But, Maryland's highest court has not considered the scope of those powers in the statute at issue. Moreover, the phrase "all powers necessary to collect, manage, and preserve property" in § 6-403 could include the power to retain defense counsel and defend an estate in litigation brought by the United States to collect taxes after the Orphans' Court has closed the estate, or it could be limited to the powers necessary to preserve estate property during the pendency of the probate proceedings, until the state court appoints a successor personal representative or the special administrator files a final account. Because the statute is susceptible to more than one

meaning, its language is ambiguous and this Court must look beyond its plain language. *See Bennett*, 878 A.2d at 678.

Under these circumstances, in which the Court of Appeals of Maryland has not interpreted the statute beyond stating in a footnote that the special administrator's powers are "limited," *Green*, 934 A.2d at 25 n.4, "a 'state's intermediate appellate court decisions "constitute the next best indicia of what state law is."'" *Castillo*, 776 F.3d at 268 n.3 (quoting *Liberty Mut. Ins. Co.*, 957 F.2d at 1156 (quoting Wright & Miller, *Fed. Prac. & Proc.* § 4507)). Indeed, O'Brien relies on *Banashak v. Wittstadt*, 893 A.2d 1236 (Md. Ct. Spec. App. 2006), the one Maryland appellate court opinion to address the issue, to argue that special administrators, unlike personal representatives, lack the power to defend an estate in litigation. Def.'s Mem. 8–9.

Certainly, a state intermediate appellate court decision "may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." *Castillo*, 776 F.3d at 268 n.3 (quoting *Liberty Mut.*, 957 F.2d at 1156 (quoting 19 Wright & Miller, *Fed. Prac. & Proc.* § 4507)). The United States asserts that *Banashak* is "persuasive but not binding authority on the subject" that only addressed the issue of the special administrator's power to prosecute or defend the estate in litigation in dicta. Pl.'s Opp'n 5. Perhaps so, but aside from noting that the Court of Special Appeals is not Maryland's highest court and that the discussion of the authority of a special administrator is in dicta, the United States does not offer any "persuasive data" that the Court of Appeals of Maryland "would decide otherwise," *see Castillo*, 776 F.3d at 268 n.3. I have carefully reviewed Judge Moylan's instructive analysis of the important difference between the powers of a personal representative and a special administrator in the context of whether a special representative has the authority to

initiate or defend litigation absent authorization by the probate court as discussed in *Banashak*. And, dicta though it may be, it is persuasive dicta from an appellate judge known for his thoroughness and scholarship and there is nothing in the record before me to suggest that the Court of Appeals would see things differently. Therefore, I will defer to the Court of Special Appeals's well-reasoned analysis in *Banashak*.

In *Banashak*, the Maryland Court of Special Appeals considered whether a special administrator could recover attorney's fees incurred defending his position as special administrator, when there was no court order authorizing him to engage in litigation. 893 A.2d at 1249.[7] As noted, the court's dismissal of the appeal as not properly before it rendered its analysis of a special administrator's powers dicta. *See id.* Yet its discussion of "the statutory distinction in the Estates and Trusts Article between a personal representative and a special administrator . . . . in terms of the respective powers and authorities of the two functions" is highly informative nonetheless. *Id.*

The *Banashak* Court noted that a special administrator replaces the personal representative when an estate transitions from administrative probate (a "controversy-free environment" in which "the personal representative and the heirs are presumptively one happy family, working toward a common goal") to judicial probate (a "more combatic mode" that is

---

[7] In that protracted litigation, the legal fees incurred by two special administrators were at issue. *Banashak*, 893 A.2d at 1250 ("The thrust of the appellants' argument is that Charles Kresslein, Jr., when he incurred legal fees for the defense of his incumbency as special administrator—at the April 7, 1998 hearing before the Orphans' Court; in the abortive appeal of May 7, 1998 to the circuit court; and in the first appeal to this Court—was only empowered to act as Special Administrator and not as full-fledged Personal Representative. The other application of the argument is that Thomas Renner, when he incurred legal fees in defending the ostensible Will of July 1, 1996 against the caveat, was only Special Administrator and not Personal Representative. The argument is that neither Charles Kresslein, Jr. nor Thomas Renner possessed the inherent authority under § 7-401(y) to 'prosecute or defend litigation' and that neither of them sought such authority from the Orphans' Court pursuant to § 6-403.").

"rife with confrontation and the possibly hair-trigger outbreak of conflict"). *Id.* at 1250 (citing Est. & Tr. § 6-307). It stated that, compared with the authority of a personal representative, the authority of a special administrator "is scaled back" and "more limited," as "the supervisory reins are pulled far tighter." *Id.* at 1249, 1250. It reasoned that "the Orphans' Court understandably circumscribes the administrator's discretionary authority and intervenes more actively" because "the fear frequently arises that the administrator of the estate may be favoring one group against the other or even favoring his own interests against them both." *Id.*

Considering Estates & Trusts § 6-403 as a matter of first impression, *id.* at 1249, and reasoning that "[t]he deliberate legislative omission of Subtitle 4 from the list of duties and powers conferred on a special administrator cannot be blithely ignored," the court concluded that "the conferring of duties and powers on the special administrator is confined to those spelled out in Subtitles 2, 3, and 5 of Title 7 and does not include those conferred by Subtitle 4." *Id.* at 1250. Thus, the special administrator has no "inherent power" to sue or be sued, given that "[i]t is only by virtue of Subtitle 4, specifically by § 7-401(y), that a personal representative is expressly authorized to engage in litigation . . . ." *Id.* As a result, a special administrator only may sue or be sued when the court issues an order granting such authority. *Id.*

This conclusion also is consistent with the rule that "[w]here Congress includes particular language in one section of a statute"—here, the language granting personal representatives the power to sue and be sued—"but omits it in another section of the same Act"—here, the statute stating special administrators' powers—, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (internal quotation marks and brackets omitted)). Thus, the state legislature intended for

personal representatives, *but not special administrators*, to have the power to sue and be sued. *See id.*; *see also Banashak*, 893 A.2d at 1250. *See generally Kaczorowski v. Livingston*, No. 2126, Sept. Term 2016, 2017 WL 6371666, at *2–3 (Md. Ct. Spec. App. Dec. 13, 2017). In *Kaczorowski*, the appellee argued that, because the appellant's "powers and duties" had been "reduced . . . from those of a personal representative to those of a special administrator, . . . appellant lost the authority to bring the instant appeal because a special administrator does not have the power to pursue litigation on behalf of the estate." *Id.* The appellate court did not reject that argument, but rather concluded that, "[e]ven if [appellant] were not a party of record in the circuit court," he nonetheless could appeal attorney's fees award "as an interested person." *Id.*

The *Banashak* Court's conclusion also is consistent with the statutory maxim, "*expressio unius est exclusio alterius*," that is, "to express or include one thing implies the exclusion of the other, or of the alternative." *Vito v. Grueff*, 160 A.3d 592, 612 (Md. 2017); *see also Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 631 (holding that the court must "give effect to Congress' express inclusions and exclusions, not disregard them"). Section 6-403 expressly incorporates Subtitles 2, 3, and 5 (inventory and appraisal, accounting, and notice to interested persons) of the Estate Administration Title of the Estates and Trusts Code, while omitting Subtitle 4 (powers of the personal representative). Following this canon of statutory construction, a special administrator does not have the enumerated powers of the personal representative because they are not incorporated into § 6-403, whereas three other subtitles are. *See* Est. & Tr. § 6-403; *Vito*, 160 A.3d at 612.

Further, the court appoints a special administrator "whenever it is necessary to protect property *prior* to the appointment and qualification of a personal representative or . . . successor

personal representative." Est. & Tr. § 6-401(a) (emphasis added). This language shows that the state legislature intended for special administrators to protect estate property only while waiting for a personal representative to be appointed. *See id.*; *Bennett v. Zelinsky*, 878 A.2d 670, 677–78 (Md. Ct. Spec. App. 2005) (noting that a statute must be considered "as a whole" and a statute's language is "[t]he principal source for determination of legislative intent"). Here, the estate closed months before the United States filed suit, and as a result, there is no pending appointment of a personal representative. Consequently, it no longer is "necessary to protect property prior to [that] appointment." *See* Est. & Tr. § 6-401(a).

It is true that, as the United States asserts, *Gibber* states that "[a] special administrator has the authority to bring an action in the Circuit Court for return of assets to the estate or to determine title to assets claimed to belong in the estate." *Gibber on Estate Admin.* § 11.6. But, just as the United States argues that *Banashak* is not binding on this Court, *Gibber* also is not controlling authority; it is a treatise. *Gibber* cites *Boehm v. Harrington*, 458 A.2d 885 (Md. Ct. Spec. App. 1983), a case that long predates *Banashak*. There, Boehm "was appointed by the Orphans' Court for Anne Arundel County as special administrator of the estate of Anne Bell Brashears, deceased, to preserve the assets of her estate." *Id.* at 886. The appellate court noted that,

> while acting as special representative, [Boehm] filed a petition in the Orphans' Court for Anne Arundel County requesting that Alice Harrington, the appellee, be required to turn over to Boehm a certificate of deposit and a bank account representing funds originally owned by Annie Bell Brashears and deposited in the names of Mrs. Brashears and Mrs. Harrington.

*Id.* Significantly, it is not clear from the case that the special administrator filed suit without first seeking authorization from the court. Moreover, it appears that Boehm engaged in litigation during the pendency of the estate, not after it had been closed, so that case is inapposite. In light

of the lack of information about the circumstances under which Boehm filed suit, along with the fact that, contrary to *Banashak*, the appellate court did not address Boehm's authority to file suit, I will not defer to this case as precedent for allowing a special administrator to defend in litigation against the Estate. *See Castillo*, 776 F.3d at 268 n.3.

Because O'Brien was appointed as Special Administrator, as opposed to Personal Representative, even if his role as Special Administrator had not terminated when the United States filed suit, Maryland Estates and Trusts law does not grant him the authority to defend this litigation against the Estate. *See* Est. & Tr. § 6-403; *Banashak*, 893 A.2d at 1250. Therefore, the claim against him in Count I must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

To avoid this result, the United States asks the Court to grant O'Brien "authority to defend the estate in this litigation" pursuant to 26 U.S.C. § 7402(a). Pl.'s Opp'n 7. The statute provides:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

26 U.S.C. § 7402(a).

This request appears for the first time in its Opposition to O'Brien's Motion. Given that the United States did not request this relief in its Amended Complaint or by motion, it is not properly before this Court. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015) (noting that an opposition to a dispositive motion is not a vehicle for amending a pleading); Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Similarly, while the United States asserts that "Defendant Marshall's

Answer appears to contain allegations of fraud against Mr. O'Brien in the preparation and payment of taxes," Pl.'s Opp'n 9, its Amended Complaint does not allege fraud (which, if alleged, must be with particularity, Fed. R. Civ. P. 9(b)), and therefore the reference to fraud in its Opposition is not properly before the Court. *See Whitten*, 2015 WL 2227928, at *7. Indeed, the United States simply alleges that O'Brien was appointed as Special Administrator; taxes were assessed against Pate for 2004 and "against Mr. O'Brien, in his capacity as the Special Administrator for the Pate Estate," for the 2007, 2008, and 2009 tax periods; and Pate, O'Brien and Marshall "failed to fully pay the assessed amounts," such that "Mr. O'Brien, in his capacity as Special Administrator of the Pate Estate, or, in the alternative, Ms. Marshall, in her capacity as a representative of the Pate Estate, . . . is indebted to the United States for the unpaid balance of the federal income tax liabilities." Am. Compl. ¶¶ 10, 12, 16. There is not the slightest suggestion in its Amended Complaint of fraud or any other wrongdoing on the part of Mr. O'Brien beyond the failure to pay the Estate's taxes in full. *See id.* Moreover, it is assumed that, if the United States intended to adopt the conclusory allegations of fraud made by Ms. Marshall, a *pro se* litigant, it would have refrained from doing so until satisfied that it had a good faith basis to do so, as required by Fed. R. Civ. P. 11. Perhaps that explains why there are no such allegations in the Amended Complaint.

Further, the United States has not identified any case law that demonstrates that the Court's authority to issue orders "as may be necessary or appropriate for the enforcement of the internal revenue laws" would permit it, in this instance, to grant O'Brien authority to defend this litigation. Certainly, the United States argues that "the probate court no longer has jurisdiction over this matter" because more than eighteen months have passed since Pate's death. Pl.'s Opp'n 8. But, the United States has not alleged or even argued that it could not have attempted

to collect these taxes while the Estate was in probate.  Therefore, it does not appear necessary or appropriate for the Court to direct O'Brien to act on the Estate's behalf, that is, for the Court to perform a function typically performed by a state court, when the state court may no longer have that authority.  The United States' request to grant O'Brien "authority to defend the estate in this litigation" pursuant to 26 U.S.C. § 7402(a) is denied.

## **ORDER**

Accordingly, it is, this 3rd day of December, 2018, hereby ORDERED that

1. O'Brien's Motion to Dismiss Count I against him, ECF No. 28, IS GRANTED;
2. Plaintiff's claim against O'Brien in Count I IS DISMISSED WITH PREJUDICE; and
3. The Clerk SHALL TERMINATE O'Brien as a Defendant in this case.

/S/
Paul W. Grimm
United States District Judge

lyb